IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS ASH,** | : | CIVIL ACTION NO. 1:16-CV-539 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **HEAT AND FROST INSULATORS AND ALLIED WORKERS LOCAL NO. 23 PENSION FUND,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Douglas Ash ("Ash") brings this action against defendant Heat and Frost Insulators and Allied Workers Local No. 23 Pension Fund (the "Pension Fund" or the "Fund")[1] pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Before the court are the Pension Fund's motion (Doc. 12) for summary judgment and Ash's motion (Doc. 15) for summary judgment.

## I. Factual Background & Procedural History[2]

The Pension Fund operates pursuant to an Amended and Restated Agreement and Declaration of Trust ("Trust Agreement") for the benefit of Fund participants. (Doc. 13 ¶ 34). The Fund's Amended and Restated Plan of Benefits ("Benefits Plan" or "Plan") governs eligibility and distribution of benefits to beneficiaries known as participants or pensioners. (Id. ¶ 1). The Board of Trustees of the Fund is the fiduciary, Plan administrator, and Plan sponsor. (Id. ¶ 35). Each

---

[1] Defendant Heat and Frost Insulators and Allied Workers Local No. 23 Pension Fund avers that "Insulators Local No. 23 Pension Fund" is the correct name of the fund. (Doc. 5 ¶ 4). For the sake of brevity, the court will refer to defendant as the "Pension Fund" or the "Fund."

trustee is also an individual fiduciary. (Id.) PATH Administrators ("PATH") serves as the Fund's third-party administrator. (Id. ¶ 2).

Participants may retire early under the Benefits Plan if they become permanently disabled and cannot carry out the regular duties of their job. (Id. ¶ 37). To receive a disability pension benefit, a disabled participant must complete an application and obtain certification of their disability by a physician. (Id. ¶¶ 37-38). A participant becomes eligible to receive disability pension benefit payments "on the first day of the month following the later of [1] [t]he date occurring six months after the inception of disability; and [2] [r]eceipt of the application by the board." (Id. ¶ 41). Disability pension benefits are payable until Medicare entitlement age or age 65, whichever occurs first. (Id. ¶ 19).

Under the original terms of the Benefits Plan, a disability pension benefit was payable "without reduction [even though] such retirement preceded the Normal Retirement Date." (Id. ¶ 39). The Board of Trustees amended this provision (hereinafter "June amendment") on June 18, 2015. (Id. ¶ 45). The June amendment provides for reductions in the amount of the pension payment depending on the age of the participant seeking benefits. (Id. ¶ 48). The new Plan calculations reduce

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 13, 16, 19). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

disability pension benefit payments for participants between the ages of 50 and 60 until they reach normal retirement age. (Id. ¶ 16). The Trust Agreement grants the Board of Trustees significant discretion and authority to determine entitlement to benefits and to amend the Benefits Plan. (Id. ¶¶ 43-44).

Ash is a Fund participant. (Id. ¶ 1). On April 20, 2015, PATH sent a letter to Ash "confirming his desire to apply for disability retirement benefits." (Id. ¶ 2). PATH also provided Ash with a preliminary pension application and an attending physician's certification of disability to complete. (Id.) In preparation for review of Ash's application, PATH generated a worksheet of Ash's projected benefits on June 15, 2015 with a handwritten markup of "need reduction." (Doc. 16 ¶ 3; Doc. 15-2, Ex. A; see Doc. 13 ¶¶ 10, 49). The markup reflected the anticipated June amendment to the Plan. (See Doc. 16 ¶ 3; Doc. 15-2, Ex. A; Doc. 13 ¶ 49). On June 26, 2015, Ash submitted his preliminary pension application indicating his desire to retire in July of 2015 at age 53. (Doc. 13 ¶¶ 3, 15; Doc. 16 ¶ 2). Ash completed his application on June 30, 2015 by sending PATH the attending physician's certification of disability confirming Ash was unable to carry out his regular work as an insulator. (Doc. 13 ¶¶ 4-5). The attending physician's certification of disability indicated Ash was totally disabled as of December 23, 2014. (Id. ¶ 5). Hence, Ash became eligible for a disability pension benefit on July 1, 2015. (Id. ¶¶ 6-7).

On July 1, 2015, the Board of Trustees reviewed and approved a draft of Ash's application for disability pension benefits. (Id. ¶ 9). According to PATH's benefit calculations as of June 30, 2015, Ash's pre-amendment monthly disability pension benefit would have been $3,085.63 per month based on a normal retirement

3

date of April 1, 2022. (Id. ¶ 12; Doc. 15-2, Ex. A). The calculation worksheet markup indicated that Ash's gross monthly disability pension benefit payment would be reduced under the June amendment by $617.13. (Doc. 15-2, Ex. A; see also Doc. 13 ¶ 17). The worksheet also indicated Ash was entitled to a supplemental benefit of $300 per month, actuarially reduced for early retirement to $240. (Doc. 15-2, Ex. A; see also Doc. 13 ¶¶ 13-14). On July 2, 2015, PATH sent Ash a final version of his application for review and signature. (Doc. 13 ¶ 18). This final version reflected a monthly disability pension benefit payment of $2,468.51 and a supplemental monthly benefit payment of $240. (Id. ¶ 19).

Ash signed and returned the application on July 6, 2015. (Id. ¶ 21). He also notified PATH of his intention to "fil[e] an appeal for [his] pension." (See id. ¶ 21). In a letter accompanying his appeal to the Board of Trustees, Ash claimed he was told by PATH employee Jill Sheets in May of 2015 that "there were no penalties" and that he would receive a monthly payment of $3,085.63. (Doc. 1-2, Ex. A). On September 30, 2015, Ash appeared before the Board of Trustees and presented his appeal. (Doc. 13 ¶ 27). The Board denied Ash's appeal by letter dated October 6, 2015. (Id. ¶¶ 28-29).

Ash initiated this case by filing a complaint (Doc. 1) on March 29, 2016. Therein, Ash asserts that the Pension Fund's reduction of his disability pension benefits was arbitrary and capricious and in violation of ERISA. (Id.) Following a period of discovery, the parties filed cross-motions for summary judgment, together with supporting papers. The motions are fully briefed and ripe for disposition.

4

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III. Discussion

Ash's claim for relief is less than pellucid. Neither Ash's complaint nor his brief in support of his motion for summary judgment specifies what provisions of

5

ERISA the Pension Fund contravened.[3] (Docs. 1, 17). Ash only asserts his right to sue under ERISA generally. (See Doc. 1 at 4 (citing 29 U.S.C. § 1132(a)(1)(B))). The Pension Fund avers three arguments in support of its motion for summary judgment: (1) the disability pension benefit should be viewed as a welfare-type benefit to which ERISA does not apply, (Doc. 14 at 4-14); (2) even if the disability pension benefit is not properly viewed as a welfare-type benefit, the benefit is not vested under the terms of the Benefits Plan and therefore not subject to ERISA, (id. at 15-16); and (3) no breach of fiduciary duty occurred because the Pension Fund's trustees were authorized to enact the June amendment under the terms of the trust, (id. at 16-18).

In response to the Pension Fund's motion, Ash states that he has "no quarrel with the defendant's legal analysis in support of its summary judgment motion." (Doc. 21 at 1). Ash contends only that the Pension Fund "breached fiduciary duties when . . . it snatched the full disability pension away from Mr. Ash at the very last minute." (Id.) He admittedly "offer[s] no contrary legal analysis" or record evidence. (Id.) Ash's cursory brief in opposition to the Fund's motion falls short of the burden on a nonmovant to provide affirmative evidence in support of his claim for relief. See Pappas, 331 F. Supp. 2d at 315; see also Celotex, 477 U.S. at 322-23. Nonetheless, the court recognizes that Ash's motion for summary judgment and

---

[3] The Pension Fund notes in its brief that Ash mistakenly references 29 U.S.C. § 1332(a)(1)(B), (Doc. 1 ¶ 1), rather than 29 U.S.C. § 1132(a)(1)(B), which permits a participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Ash later corrects that citation in the complaint, but he cites to no additional ERISA provisions that bear on his allegations. (See Doc. 1).

supporting papers articulate and expound upon a breach of fiduciary duty argument. The court thus construes Ash's claim as one for breach of fiduciary duty by the Fund's trustees.

### A. Fiduciary Duty Under ERISA

ERISA ensures that workers promised defined benefits upon retirement, assuming eligibility requirements are met, actually receive those promised benefits. Shaver v. Siemens Corp., 670 F.3d 462, 470-71 (3d Cir. 2012) (citing Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996)). The law meticulously balances competing priorities and interests of employers and plan participants in determining what actions implicate fiduciary duties under ERISA. See Renfro v. Unisys Corp., 671 F.3d 314, 321 (3d Cir. 2011) (citations omitted). A person acting in the capacity of a manager, administrator, or financial advisor to a plan is deemed a fiduciary under ERISA. Santomenno *ex rel.* John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 291-92 (3d Cir. 2014) (citing Pegram v. Herdrich, 530 U.S. 211, 222 (2000); 29 U.S.C. § 1002(21)(A)). The threshold inquiry for any breach of fiduciary duty claim is whether the person or entity was performing a fiduciary function when taking the challenged action. Id. (citing Pegram, 530 U.S. at 226); see also Varity Corp. v. Howe, 516 U.S. 489, 498 (1996).

Ash identifies two actions in support of his claim. First, Ash avers that the Fund targeted Ash by amending the Benefits Plan after Ash applied for benefits but before calculation of his benefits was finalized. Second, Ash asserts that the Fund, through PATH, misrepresented that his disability benefits would not be reduced. (Doc. 17 at 2).

7

### B. Amendment of a Benefits Plan

Amendment of an ERISA covered benefit plan is not a fiduciary act. Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 127 (3d Cir. 2006) (citing Spink, 517 U.S. at 890; Walling v. Brady, 125 F.3d 114, 120 (3d Cir. 1997)). An employer or plan sponsor is permitted to adopt, modify, or terminate welfare plans at any time and for any reason without falling into the category of fiduciaries.[4] Walling, 125 F.3d at 117 (citing Spink, 517 U.S. at 890)). An employer undertaking these actions acts not as a fiduciary, but more akin to the settlor of a trust. Id. (citing Spink, 517 U.S. at 890)). This principle applies with equal force to multiemployer plans with joint board trustees like the Pension Fund *sub judice*. Id. at 118-120.

Ash admits that the Pension Fund had the legal authority to make changes to the disability provisions which altered the calculations applied to his request for benefits. (Doc. 17 at 2). A plan's settlor can make decisions regarding the form or structure of the plan including who is entitled to plan benefits, in what amounts, and how such benefits are calculated. Jacobson, 525 U.S. at 444. Ash contends the Pension Fund specifically "targeted" his application for reduction by amending the Plan after receiving notice of Ash's desire to apply but before approving his

---

[4] The Pension Fund contends that disability benefits are more akin to welfare benefits than pension benefits. (Doc. 14 at 5-8). The characterization of these benefits is of no moment. The Supreme Court has expressly held that a plan sponsor's unfettered right to adopt, modify, or terminate a plan applies to both "'pension benefit plans' and 'welfare benefit plans,' since '[t]he definition of fiduciary makes no distinction between persons exercising authority over' these different types of plans." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443 (1999) (quoting Spink, 517 U.S. at 890-91).

8

application. (Doc. 17 at 2-3). But ERISA does not proscribe discrimination in the provision of employee benefits.[5] Jacobson, 525 U.S. at 444 (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983)). An employer can create, amend, or terminate a plan that furthers its business interests, and the employer is not a fiduciary when "it makes determinations according to the plan's terms that affect employees' eligibility for benefits." Noorily v. Thomas & Betts Corp., 188 F.3d 153, 158 (3d Cir. 1999) (citations omitted).

The sole case Ash relies on in his brief, Pinto v. Reliance Standard Life Insurance Co., 214 F.3d 377 (3d Cir.), as amended (3d Cir. 2000), is inapplicable. Ash misapprehends Pinto, which speaks only to the outright denial of benefits under an ERISA plan. Id. at 378. Ash does not contend that the Pension Fund wrongfully denied him disability benefits. Consequently, Pinto provides no support for Ash's contention that the Pension Fund amended the Plan in violation of ERISA.

**C.     Misrepresentation to a Plan Participant**

Ash avers that the Pension Fund made misrepresentations regarding the processing and calculations of his disability pension benefit application. (Doc. 17 at 2). Unlike plan amendment, provision of information regarding plan benefits and coverage constitutes a fiduciary act. Leuthner, 454 F.3d at 127 (citation omitted). An employee may recover for a breach of fiduciary duty if an employer, acting as a

---

[5] Assuming *arguendo* that ERISA proscribed discrimination in the provision of employee benefits, Ash has provided no record evidence that he was "targeted" by the Fund. (Doc. 17 at 2-3). The benefits calculation worksheet dated June 15, 2015 generated by PATH shows that the new formula for the early retirement reduction applied to Ash and another participant. (Doc. 15-2, Ex. A). Ash provides no record evidence suggesting that Plan amendments did not apply equally to all subsequent participant applications.

fiduciary, "made a misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment." Id. at 127-28 (quoting In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d 497, 505 (3d Cir. 2001)).

Ash received instructions on how to apply for disability benefits. (Doc. 17 at 2). Ash claims the Pension Fund "provided" that disability benefits were to be the same as pension benefits "without reduction." (Id.) This was the language of the Benefits Plan prior to the June amendment. (Doc. 13 ¶ 39). During the course of giving Ash instructions on how to apply for disability benefits, a PATH Administrator told him in May of 2015 that there would be "no penalties." (Doc. 1-2). Ash did not complete his application until twelve days after the June amendment when PATH received the physician's statement of disability on June 30, 2015, (Doc. 13 ¶ 4), and Ash only became eligible for benefits on July 1, 2015, (id. ¶¶ 5-7).

The Rule 56 record belies Ash's characterization of the Fund's actions. The representation by a PATH employee in May of 2015 that there would be no penalties was true at the time made because the June amendment had not yet been adopted. (Doc. 1-2; Doc. 13 ¶ 45). And Ash acknowledges that the Pension Fund legally amended the Plan. (See Doc. 21). The Pension Fund conducted disability benefits calculations a full month after the supposed representations that there would be no penalties. Ash points to no record evidence to suggest that the PATH employee knew of the proposed amendment in May of 2015 and intentionally misled

10

him. Even if the PATH employee was aware of the proposed amendment, the alleged representations were nevertheless true when made.

Ash also asserts that PATH instructed him in April 2015 not to submit his application until June 1, 2015. (Doc. 1 ¶ 12). But submitting an application before the June amendment would not have changed the outcome of Ash's disability pension benefit award. Ash's eligibility was not predicated on when he applied, but rather on the Plan provision requiring six months of disability. By virtue of this mandatory provision, Ash was not eligible for benefits until July 1, 2015. (Doc. 13 ¶¶ 5-7). Accordingly, the Pension Fund was entitled to recalculate Ash's benefits after the June amendment and before his eligibility period began regardless of whether his application was received in April, May, or June of 2015.

Taken together, Ash's motion for summary judgment and his opposition to the Fund's motion for summary judgment do not set forth sufficient affirmative evidence to maintain a cause of action for breach of fiduciary duty under ERISA. Nor does Ash establish that the Pension Fund engaged in conduct that would subject it to the relevant ERISA provisions addressing fiduciary duties of plan trustees. The court will therefore grant the Pension Fund's motion and deny Ash's motion for summary judgment.

**IV.    Conclusion**

Ash's claim does not survive Rule 56 scrutiny.  An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    September 27, 2017